## Gill & Fisher, Limited, *v.* John T. O'Rourke, trading as John T. O'Rourke & Co., Appellant.

*Evidence—Construction of writings—Province of court.*

Where a printed rule of the commercial exchange and a written notice purporting to be given thereunder are in the case, it is the duty of the court to construe them and determine the rights and duties arising therefrom.

*Contract—Default under rules of the exchange—Notice construed.*

Where a rule of the exchange, of which the parties to the suit are members, required a vendor, on receiving written notice that a default on a contract was intended, to sell on or before the first open board thereafter, a letter from the vendee to the vendor, which states, " So far as we are concerned deal is off," is a notice under this rule irrespective of the reasons given for such default. The vendee was not bound to give any reasons, hence the reasons, when given, do not enter into the case for either consideration by the jury or construction by the court.

Argued Oct. 6, 1897. Appeal, No. 40, Oct. T., 1897, by defendant, from judgment of C. P. No. 2, Phila. Co., Mar. T., 1893, No. 281, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Reversed.

Assumpsit. Before SULZBERGER, J.

Plaintiffs and defendant were members of the commercial exchange in Philadelphia. On September 21, 1892, plaintiffs sold to defendant twelve thousand bushels No. 2 mixed corn to be delivered in lots to suit the buyer between the date of sale and the 10th of October ensuing. The sale took place on the floor of the exchange. On the 27th of September the appellant ordered from the plaintiffs two thousand bushels of this corn, whereupon plaintiffs required payment in money or bank due bill. As a consequence of this, a controversy ensued between the plaintiffs and defendant, and on the 28th, defendant wrote the plaintiffs the following letter:

"9/28, 1892.

" MESSRS. GILL & FISHER CO., LTD.:

" Gentlemen:—After due consideration we have arrived at the following conclusion, as you refuse to take our check and

deliver us the corn as we want it between now and the 10th of October, 1892, we would say you can keep the corn, as we do not care to deal with parties who treat us that way, we do not take this stand because the market is somewhat lower to-day than when we bought the corn.  As we have never faltered in any of our contracts we did not propose to do so in this.  But when a firm is afraid to take our check the best way to do is to keep your goods, and not deal with us.  So far as we are concerned deal is off.

"Yours respectfully,

"J. T. O'ROURKE & Co."

It appears from the evidence that there exists a rule of the exchange regarding defaults in contracts, which is as follows:

"Sec. 3. When one party to a contract shall give notice in writing to the other party that default on said contract is intended, it shall be the duty of the party receiving such notice (unless it should be mutually arranged otherwise) to buy or sell, as the case may be, on or before the first open board thereafter, the amount of grain necessary to cover such contract, and immediately to advise the party in writing of such transaction."

Other material facts appear in the opinion of the court.

Verdict and judgment for plaintiffs for $548.10.  Defendant appealed.

*Errors assigned* were (1) in charging the jury as follows: "Then I charge you that a default under this rule means that a person who gives the notice of default acknowledged in some way, it need not be by express words, that the valid subsisting contract upon which he is liable, is proposed to be ended by him without the consent of the other party to the contract, namely, that he intends to break the contract.  I also charge you that to impose upon the other the blame of his having broken the contract is not notice of a default within the meaning of this rule, and I further charge you that that writing, which is a letter, and therefore capable of being construed by the court that the writing of Mr. O'Rourke is not notice of default within the rule, because instead of giving notice of his default it is a charge that the plaintiffs have made default.  With this notice out of the way as it is by my instructions on this point, of course the plaintiff was not bound to sell on that day."  (2) In declining

the defendant's first point as follows : " 1. That if the jury find that the defendant (John T. O'Rourke) notified the plaintiffs (Gill & Fisher) in writing on September 28, 1892, that the deal or contract for the purchase of twelve thousand bushels of corn was off, or that he did not intend to comply with same, the plaintiffs were bound to sell the twelve thousand bushels of corn on or before the first open board thereafter at the commercial exchange, in conformity with section 3 of the rules governing defaults of said exchange." (3) In charging the jury as follows : " The defendant says he accepted, and he has a witness who does not prove anything about it. Mr. Sexton swears that he accepted it, but that evidence you are bound not to consider. No man has a right to swear to a conclusion of law. The acceptance of a contract is a legal conclusion from certain words and acts theretofore done, and Mr. Sexton being pressed gave the whole of the discussion and he always ended with the offer of the plaintiff to pay $90.00, and he never said a word that the plaintiff had said in reply. Therefore you are remitted entirely to the uncorroborated evidence of the defendant for the $90.00 settlement."

*W. Horace Hepburn*, for appellant.

*Silas W. Pettit*, with him *John R. Read*, for appellee.

OPINION BY SMITH, J., February 19, 1898 :

The plaintiffs, by a contract made September 21, 1892, sold the defendant twelve thousand bushels of corn, " to be delivered in quantities to suit, up to Oct. 10th." On September 27, the defendant called for one thousand five hundred to two thousand bushels, but the plaintiffs declined to receive the defendant's check in payment and none was delivered. No further call was made ; and the plaintiffs, having tendered the corn October 10, resold it October 11, for less than the contract price. This action is brought to recover the difference. The defense is directed both to the right of action and the measure of damages. As to the former, the defendant asserts that the refusal to receive his check was a violation of an agreement to take it which gave him a right to rescind the contract. As to the measure of damages in the event of his liability, he alleges

that on September 28, he gave the plaintiffs written notice that he would default on the contract, and that, under a rule of the commercial exchange to which the sale was subject, it thereupon became the duty of the plaintiffs to sell the corn on or before the first open board thereafter, which was on the day following; and further alleges that before giving this notice it was agreed that he should pay the plaintiffs $90.00 in settlement of the matter, though payment has not been made. The only questions raised by the assignment of errors, however, relate to the construction and effect of the rule and notice referred to, and a portion of the evidence respecting the alleged settlement.

The first point submitted by the defendant, though correctly stating a conclusion of law, was, as a whole, properly refused. The rule of the exchange being a printed one, and the notice to the plaintiffs being in writing, there was nothing for the jury to find as to their effect. It was for the court to construe them, and determine the rights and duties arising from them.

The portion of the charge embraced in the first specification was erroneous. The rule of the exchange required the plaintiffs, on receiving notice that default on the contract was intended, to sell on or before the first open board thereafter. The defendant's letter of September 28 was clearly notice of his intention to default. If he chose to incur the consequences of a default, he was not bound to give a reason therefor; hence it is not material whether the reason assigned was sufficient to justify a rescission of the contract. With or without such reason, his letter was unmistakable notice of an intention not to comply with his contract; and it cannot be contended that noncompliance is not default. Throughout this letter, with its comment on the action of the plaintiffs, the defendant's purpose not to take the corn which he had contracted for is evident. Its concluding sentence: "So far as we are concerned deal is off," is unequivocal; it can be understood only as a final declaration of the defendant's intention to default on his contract. It is apparent, also, that the plaintiffs so understood it; for in their answer of September 30 they describe it as "repudiating for alleged reasons" the contract for the corn. Again, in the declaration, they aver that the defendant, "on Sept. 28th, 1892, repudiated said contract." Assuredly they cannot com-

plain if their averment of record be taken as correct; and repudiation is certainly default. A default on September 28 being laid as the ground of action, the measure of damages must be determined by the rule of the exchange as to such default; on this point, the date is material. Viewing the defendant's letter as notice of his intention to default, it was undeniably the duty of the plaintiffs, on receiving it, to resell the corn on or before the first open board thereafter, which appears to have been on the day following; and it was their right to hold the defendant for any loss on such resale. If, indeed, as appears from some of the evidence, the price at that time was above the contract price, they would have sustained no loss on such resale, and the measure of damages indicated would yield them nothing.

The alleged agreement for payment of $90.00 as a settlement would, if made, fix the measure of damages independently of the notice and rule. The finding of the jury against it may have been due to the inaccurate reference by the trial judge to the testimony of one witness in relation to it, which is made the subject of the third specification of error. This witness testified: "Finally, Mr. Barker, as I understood it, he said it plain enough, said that he would accept three quarters of a cent. Mr. O'Rourke had not yet agreed to pay it, but in a few moments he said: 'Well, in order to avoid a controversy, I will pay you the $90.00, and that will end our transactions.'" The language of the learned trial judge with reference to the testimony of this witness was calculated to mislead the jury. Should the parties proceed to another trial the evidence on this point can receive closer attention, and it may then present a different aspect.

Judgment reversed and venire de novo awarded.